HARRIS v. THOMAS et al. (No. 1590.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 7, 1920.)

1. INJUNCTION ⚌119—PLEADING OF DEFENDANT WITHDRAWING FROM GENERAL ANSWER OF CODEFENDANTS NOT ADMISSION THAT INJUNCTION WAS PROPER.

In an action by a physician to enjoin certain physicians, as members of a hospital staff, and the hospital, from interfering with his practice in the hospital, answer filed by an attorney for the hospital reciting that the hospital withdraws from the answer filed by all the defendants held not to be construed as meaning that the plaintiff was entitled to injunction against hospital, although it stated "that the position of this defendant [the hospital] is, and always has been, neutral in the matters involved therein."

2. INJUNCTION ⚌172—ANSWER PROPERLY VERIFIED ON MOTION TO DISSOLVE.

An answer and affidavits filed therewith held to constitute a properly verified answer which entitled defendant filing it to a dissolution of a temporary injunction theretofore granted, under Rev. St. 1911, arts. 4663, 4664.

3. INJUNCTION ⚌172—NOT DISSOLVED UNTIL ALL THE DEFENDANTS ANSWER, EXCEPT WHERE ANSWER OF PART SHOWS ALL FACTS.

The general rule is that an injunction granted against several defendants will not be dissolved until all defendants implicated have fully answered denying the equity; but where one defendant files his answer, and, from his own connection with the subject in controversy and his own personal knowledge, is able to lay such facts before the court as to render it apparent that the complaint establishes no equity, a motion to dissolve may be granted without answer of the other defendants.

4. INJUNCTION ⚌176—ORDER DISSOLVING TEMPORARY INJUNCTION ORDINARILY INTERLOCUTORY.

An order dissolving an injunction is ordinarily interlocutory.

5. INJUNCTION ⚌172—ANSWER TAKEN AS TRUE ON MOTION TO DISSOLVE.

On motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive, is taken as true.

6. INJUNCTION ⚌161—DISSOLUTION WITHIN SOUND DISCRETION OF COURT.

While a complete denial under oath of all the equities in a bill for an injunction does not entitle a party to a dissolution of a temporary injunction as a matter of law, it places the whole matter within the sound discretion

of the court to dissolve the injunction or not, as the equity of the case may require.

**7. INJUNCTION ⬤⟶172—ANSWER SUFFICIENT-LY REFUTED WRONGFUL INTENT ON MOTION TO. DISSOLVE TEMPORARY INJUNCTION.**

In an action by a physician to enjoin members of a hospital staff and a hospital from preventing him from practicing medicine in the hospital, an answer by the members of the staff *held* to sufficiently refute any wrongful intent or that they conspired to deprive plaintiff of any rights.

**8. ASSOCIATIONS ⬤⟶8—MAY PRESCRIBE QUALIFICATIONS FOR MEMBERSHIP WITHOUT COURT INTERFERENCE.**

A voluntary association has power to enact laws governing the admission of members and to prescribe the necessary qualifications for membership; membership being a privilege which the society may accord or withhold at its pleasure, with which a court of equity will not interfere, even though the arbitrary rejection of the candidate may prejudice his material interest.

**9. ASSOCIATIONS ⬤⟶5—COURT WILL NOT ORDINARILY INTERFERE WITH RIGHT TO MAKE RULES.**

Courts sometimes interfere where members of voluntary associations have been wrongfully excluded or expelled, but as a rule they will not interfere with the right of an association to make laws or rules, unless they are against good morals or violate the laws of the state.

**10. CONSPIRACY ⬤⟶8—MEDICAL ASSOCIATION LEGITIMATE AND LAWFUL, AND NOT UNLAWFUL CONSPIRACY.**

A medical association, qualifications for membership being that applicant must not support or profess an exclusive system of medicine or advertise as such, is legitimate and lawful, and has the right to advance its practice and interest and that of its members by all legitimate means, and is not rendered an unlawful conspiracy merely because it directly affects the material interest of an osteopath, under Rev. St. 1911, arts. 5733, 5736, 5741, 5742, 5745, and the Constitution.

**11. CONSPIRACY ⬤⟶8—MEDICAL ASSOCIATION MAY REFUSE TO AID PHYSICIAN PROFESSING DIFFERENT SYSTEM OF MEDICINE.**

Members of a medical association, an organization which no physician professing an exclusive system of medicine could join, could legally agree among themselves not to assist an osteopath in surgery, if they did so in good faith, and with no intent to injure the osteopath.

**12. PHYSICIANS AND SURGEONS ⬤⟶5(1)—LICENSE A PRIVILEGE OR FRANCHISE.**

A license to practice medicine is a privilege or franchise granted by the government.

**13. HOSPITALS ⬤⟶6—MAY REFUSE PHYSICIAN OF A DIFFERENT SCHOOL RIGHT TO PRACTICE THEREIN.**

The governing body of a hospital may refuse to permit physicians professing a certain system of medicine to practice in the hospital, and adopt such regulations as are proper or deemed by it necessary or expedient to improve the hospital, and require of those using its equipment that they possess specific medical learning and equipment in order to receive membership on the medical staff, and to accomplish this may employ a committee of physicians to standardize the hospital, if done in good faith with no evil intent to injure or oppress.

**14. ACTION ⬤⟶1—LEGAL RIGHT NECESSARY.**

Where there is no legal right interrupted, there is no cause of action.

**15. APPEAL AND ERROR ⬤⟶1041(5)—REFUSAL TO PERMIT FILING OF SUPPLEMENTAL PETITION HARMLESS.**

It was not prejudicial error to refuse to permit the filing of a supplemental petition where the filing could not have affected the result.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by M. B. Harris against G. T. Thomas and others. From an order dissolving a temporary injunction theretofore granted, the plaintiff appeals. Affirmed.

F. P. Works, of Amarillo, for appellant.

Madden, Trulove, Ryburn & Pipkin, Kimbrough, Underwood, Jackson & Simpson, Veale & Lumpkin, and Reeder & Reeder, all of Amarillo, for appellees.

HUFF, C. J. The appellant, Harris, by his petition sought an injunction and to recover damages against G. T. Thomas, A. F. Lumpkin, E. A. Johnson, R. D. Gist, R. L. McMeans, G. T. Vineyard, I. Rascoe, J/ R. Wrather, J. D. Jordaan, S. P. Vineyard, W. H. Flamm, J. J. Crume, and the Congregation of Sisters of Charity of the Incarnate Word. The prayer of the petition is for a writ of injunction restraining each of the defendants from further interfering with his practice in the St. Anthony Sanitarium and requiring and directing the Congregation of Sisters of Charity of the Incarnate Word, its agents and representatives, in control of the sanitarium, to permit plaintiff to practice therein as he did prior to May, 1919, and defendant doctors and those acting under their direction be restrained from directly or indirectly, through their employment or lack of employment of nurses, or otherwise, from influencing the managers of the sanitarium against plaintiff or his practice in any way, and for judgment perpetuating the injunction, and in the alternative for damages, etc. The petition was presented to Hon. Henry S. Bishop, judge of the district court, July 19, 1919, whereupon he granted a temporary writ as prayed for, and indorsed his action on the petition. The petition and bond were filed on said date by the clerk of the district court of Potter county. The defendants filed a motion to dissolve

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the injunction, and upon hearing in vacation September 30, 1919, Hon. Henry S. Bishop dissolved the injunction theretofore granted, from which order this appeal is prosecuted. The statement of the pleadings and issues made by the appellees is a reasonably fair condensation of the voluminous pleadings in this case, and for convenience we adopt their statement which is as follows:

"The plaintiff alleged that he was a regularly licensed physician, practicing medicine and surgery, and being licensed to practice medicine and surgery under the laws of the state of Texas as a doctor of osteopathy, medicine, and surgery, issued to him on November 13, 1907, by the state board of medical examiners of the state of Texas, which license had been in full force and effect at all times since the date of its issuance, and being duly registered, as required by law, in the office of the district clerk of Potter county, Tex.; that he was 44 years of age, and during his life had acquired an education that would fit him for the practice of medicine, osteopathy, and surgery, and had taken a full course in American School of Osteopathy at Kirksville, Mo., graduating in 1898, and since that time had practiced in Missouri and Texas, having taken a postgraduate course in 1908, taking full courses in operative surgery and medicine; that he had also taken medical lectures in the Northwestern University and in Rush Medical College, and had attended clinics of Mayo Bros. in Rochester, Minn., as well as Murpheys and Ochners, and had likewise attended clinics and studied surgery in London and Paris, and in 1915 received a medical degree from the Pacific Medical College of Los Angeles, Cal.; the plaintiff moved to Amarillo in the year 1910, and since that time had built up a practice in osteopathy and surgery, including an extensive practice, most of which hospital work had been done in St. Anthony's Sanitarium, which is operated and controlled by defendant Congregation of Sisters of Charity of the Incarnate Word, and that the said St. Anthony's Sanitarium is the only sanitarium and hospital in Amarillo, and that plaintiff's patients had used the same almost exclusively; that the 11 individual defendants heretofore named, as practicing physicians and surgeons in Amarillo, had likewise used said sanitarium in their surgical and hospital work; that about the year 1912 the defendant doctors entered into a conspiracy and boycott to drive plaintiff out of his practice and business, and in furtherance thereof the defendants Thomas, Lumpkin, Johnston, Vineyards, and Crume demanded of those in charge of that sanitarium that plaintiff be excluded from operating and practicing therein, upon the ground that he used and practiced osteopathy, and said that, if he was not so excluded, they and the other doctors with whom they were associated, amounting to about 20 doctors, would cease to practice and operate in said sanitarium, and further stated that, if plaintiff was not excluded, they would open up and operate an independent hospital in Amarillo, in opposition to said sanitarium; that the management of said sanitarium would not accede to said demand, and that, in pursuance of said threat, the defendants Thomas and Lumpkin did open up and operate for about a year and a half a hospital at the corner of Sixth and Tyler streets in Amarillo; that the defendant doctors have carried on their conspiracy and attempted to boycott under the name of the Potter County Medical Association, whose policy they completely dominated, and that in furtherance of said conspiracy the secretary of the said Potter County Medical Association in 1912 gave notice in writing to all the members of said association that, if they administered an anesthetic for or assisted plaintiff in any way in a surgical operation, they would be expelled from said association, and plaintiff, being deprived of the assistance of other doctors in the administration of anesthetics, was required at great expense to provide assistance by bringing into his office doctors from a distance, to his damage in the sum of $5,000; that, in still further pursuit of such conspiracy and boycott against said plaintiff, a rule was passed in said association that no major surgical operation could be performed at said sanitarium unless there were three doctors present, which required plaintiff to go to an additional expense of bringing doctors from other towns, to plaintiff's further damage in the sum of $1,000; that the defendant doctors, in the further effort to ruin the plaintiff in his business and profession, influenced and induced practically all the nurses who worked in said sanitarium and in and about Amarillo to refuse to nurse cases for plaintiff; that the defendant doctors, through the Potter County Medical Association and its affiliated associations, to wit, the State Medical Association of the state of Texas and the American Medical Association, in an effort to oppose and ruin in business all physicians who practice osteopathy, have attempted to put into effect in the hospitals and sanitariums in the country, and especially in St. Anthony's Sanitarium, in Amarillo, a process and change called standardization; in and through the influence of defendant doctors by means of their control of the Potter County Medical Association, in connection with the other associations, an influence has been brought to bear upon the managers of the sanitarium and other hospitals as to the matter of securing and employing nurses to receive free training and lectures from said doctors by opposing the use of nurses from sanitariums which permitted the practice of osteopathy therein; that about May 29, 1919, the defendants Thomas, Lumpkin, Lawler, Johnston, Gist, McMeans, G. T. Vineyard, and Rasco went to the sanitarium, and, after consulting with those in charge, to wit, Mother M. Nativity and Sister Denis, agreed with them to assist in standardizing said hospital and organizing a medical staff without unjust discrimination against any one, and that said doctors organized themselves into a staff of physicians and agreed upon what other doctors should be admitted to the staff, and instructed said Sisters that plaintiff would be excluded from said staff and not be permitted to practice in said institution, and instructed the Sisters to so advise the plaintiff, which they did; that said exclusion was not on the ground of incompetency, lack of skill, or capability as a surgeon, but simply because he was irregular and was not a member of the particular branch of medicine represented by said staff

or board, and not a member of the local association; that said plan of standardization advocated more thorough complete records, a more adequate laboratory service, and the organization and development of a staff of doctors according to the plans of the American College of Surgeons, which contemplates an open and restricted staff; and that the defendants were making a subterfuge and cloak of said standardization for the purpose of arbitrarily and maliciously eliminating plaintiff from practicing in said hospital and for the purpose of securing a monopoly of said practice in said sanitarium.

"Plaintiff further alleges that said discrimination and boycott was illegally made, and is not so permitted by the laws of the state of Texas, and is a criminal trust under the penal statutes of the state of Texas, and that plaintiff is licensed to practice medicine, surgery, and osteopathy, and is entitled to practice the same without any molestation or restraint; that, in furtherance of said conspiracy, defendant doctors have circulated false and fraudulent statements among plaintiff's friends and acquaintances as to his capability and efficiency as a surgeon, stating that he had received his license by mail, and stating that he was irregular and offgrade in his training, and lacked training and preparation, notwithstanding the fact that plaintiff's skill equaled, if not exceeded, that of the defendant doctors; that said statement was circulated for the purpose of injuring and ruining said plaintiff in business; that by reason of being excluded from said hospital plaintiff has been damaged at least $1,000 per year for five years preceding the filing of his suit, and deprived of his hospital practice, of the value of at least $5,000 per year, by reason of being unlawfully excluded from St. Anthony's Sanitarium, which said damages at the rate of $5,000 per year will continue to accrue unless the injunction prayed for should be granted; that plaintiff's practice was growing, and would become larger and more lucrative as time went on."

On September 8, 1919, the defendants filed a joint answer, containing a general denial and some 16 paragraphs, specially denying under oath the material averments in plaintiff's petition and equities sought to be set forth, alleging in substance as follows:

"(1) Defendants deny the allegations contained in paragraph 1, and deny that plaintiff is a regularly licensed physician and practitioner of medicine and surgery, and say that the registration of his license in Potter county, Tex., shows him to be licensed as an osteopath, and not as a physician and surgeon; that plaintiff holds his license under one of the irregular boards which existed at the time he was granted license, and when the law of 1907 was passed it permitted those who held outstanding license issued by said irregular boards to obtain license from the consolidated board created by that law, but required them in registering such licenses with the district clerk to state under oath to what school of practice they belonged, and that the registration of plaintiff's license designates him as an osteopath, and does not authorize him to practice medicine or surgery, but only to practice osteopathy, which is separate and dis-

tinct from both medicine and surgery, opposing the administration of medicine to the sick, but substituting some form of manual manipulation of the different parts of the body as a substitute for medicine and surgery, and that plaintiff's attempt to practice medicine and surgery in Potter county has at all times been contrary to the laws of the state of Texas; that defendants deny that plaintiff holds any license obtained by examination before the board of medical examiners, existing under the present laws of the state of Texas.

"(2) They deny the allegations in paragraph 2 as to plaintiff's qualifications and training since boyhood for the practice of surgery, but say that plaintiff's studies have been in a school or cult known as osteopathy. They allege that the course of study in the American School of Osteopathy consisted only of about one year's work, and did not confer upon him that degree of M. D., but only the degree known as D. O., or Doctor of Osteopathy. They say that plaintiff's allegations as to taking postgraduate courses, lectures, and clinics did not qualify him to practice medicine or surgery, and that said postgraduate school and hospital confers no degrees, but permits any person to attend its courses, and gives merely certificates of attendance, which has no significance as to the efficiency of a person so attending as to his knowledge of medicine and surgery, and that this applies to plaintiff's allegations as to clinics, lectures, and postgraduate course attended by him in this county and in London and Paris, and they further say that the Pacific Medical College, from which plaintiff claims he holds a diploma, was not a regular school of medicine, and was not recognized by the regular profession as a reputable medical school, and is now extinct, and that plaintiff only attended the same for about six weeks as a mere subterfuge, so that he might advertise himself as a M. D., when, in truth and in fact, he secured no adequate training in said college and no proficiency in the practice of medicine and surgery, and that plaintiff has given no special attention to medicine and hospital surgery during his practice, but that during said time his chief attention has been to the practice of osteopathy, a professional cult and sect foreign and antagonistic to the proper practice of medicine and surgery."

The various allegations alleging certain facts and acts done by the defendant doctors, in furtherance of a conspiracy, etc., were denied specifically by the defendants. The defendants further set up:

"(7) They deny the allegations contained in paragraph 7 of plaintiff's petition, especially denying that they, or the Potter County Medical Association, or that they as members of the Potter County Medical Association, through its affiliation with the State Medical Association of the state of Texas, and the American Medical Association, are parties to a scheme and device to oppose all physicians who practice osteopathy, but admit that the members of said association are composed, for the most part, of regular physicians, and say that the regular school of medicine does not exist for the purpose of opposing vicious and irregular cults, but for the purpose of building up the standards and increasing the knowledge and efficiency and

enlarging the sphere of usefulness of the regular medical profession, and multiplying its services to the sick and suffering world.

"(8) The allegations contained in paragraph 7a of plaintiff's petition are likewise denied, the defendants denying that in the month of May, 1919, they, taking advantage of the change in the management at St. Anthony's Sanitarium, renewed their attacks upon plaintiff by working under the cloak of an alleged plan of standardization, and deny the existence of any such claim or purpose or plan, and deny that the defendants Thomas and seven associates, as alleged by plaintiff, went to said sanitarium and represented to the Sisters in charge, to wit, Mother Nativity and Sister Denis, and agreed that they would assist in standardizing and organizing a medical staff of physicians for said sanitarium honestly and fairly, with due regard to the interest of all concerned, and without unjust discrimination against any one, and immediately organized themselves, said last-named eight doctors, into a staff of physicians for said sanitarium and instructed said Mother and Sister to advise plaintiff that he would be excluded from practicing in said institution, and that they did so advise plaintiff, thereby excluding him from further practice of surgery, osteopathy, and medicine in said sanitarium, and deny that said self-constituted board or staff of doctors made a charge or claim of incompetency, lack of skill, or incapacity against plaintiff, and so advised said authorities, but simply stated that he was irregular and not in fellowship with the defendants, as an association or as doctors, and they deny that the Sisters in charge of said sanitarium had no objection to plaintiff as a physician and surgeon, and would make no objection to his practicing in said institution, but for the objections of defendant doctors. On the contrary, defendants represent that the facts with reference to the standardization of said St. Anthony's Sanitarium were as follows: That said St. Anthony's Sanitarium is a Catholic institution, the Mother and Sisters in charge of said institution being subject to the control and direction of their superior church officials, and that St. Anthony's Sanitarium, together with other hospitals of similar nature all over the country, belong to what is known as the Catholic Hospital Association of the United States and Canada; that, while there has not been an agitation with respect to standardizing hospitals, it is a fact that representative bodies of physicians and hospitals have in recent years been forwarding plans for the standardization of hospitals, and the American Medical Association and the American College of Surgeons, as well as the Catholic Hospital Association, have been, and are still, favoring the standardization of hospitals for the purpose of preventing hospitals from being imposed upon by incompetent physicians and surgeons and from unworthy persons obtaining the use of the facilities provided by hospitals for criminal and fraudulent purposes; that the defendants have from time to time received information of the movement for standardization of hospitals, and said Mother M. Nativity, and other hospital authorities, have also received information of the movement for standardization of hospitals, and have received information from sundry sources on that subject; that some time during the month of March, 1919, Mother Nativity was required to attend a meeting at

Ft. Worth at which the director of the American College of Surgeons was in attendance, at which meeting the plan of standardization was considered, and on her return to Amarillo Mother Nativity took the initiative in the matter of standardizing St. Anthony's Sanitarium in harmony with the principles of the Catholic Hospital Association, of which said St. Anthony's Sanitarium is a member, and on or about the 22d of May, 1919, she addressed to each of 9 physicians in Amarillo, to wit, Drs. Gist, Johnston, Killough, Lawler, Lumpkin, McMeans, Rasco, Thomas, and G. T. Vineyard, a letter reading as follows: 'On Tuesday evening next at 7:30 we will hold a meeting here to organize a staff of doctors for St. Anthony's Sanitarium. As you see by the attached list, your name is on the executive committee. Kindly inform us by return mail if you can attend'—that accordingly, on May 27, 1919, said physicians met for the purpose of organizing a staff for St. Anthony's Sanitarium, and proceeded with the organization, it being the plan of Mother Nativity, and her request, that said staff be composed of members of the Potter County Medical Association, of which association plaintiff was not a member, his application for membership having been in June, 1918, rejected by a unanimous vote of said association; that plaintiff was not invited by Mother Nativity to be present at the meeting, nor was he placed on said staff at the organization thereof, nor has he at any time been placed thereon, and at said meeting on May 27, 1919, about 22 physicians residing in Amarillo were made members of said staff, which list was communicated to Mother Nativity, and that, according to the plan of said standardization, persons who were not members of said staff were not to have the privileges of practicing at said sanitarium, which facts were by Mother Nativity communicated to plaintiff, and she also communicated to him her duty of conforming with such plan of standardization; that this condition was brought about not as a result of any attack by the defendants nor from any conspiracy or boycott upon their part.

"(9) As to the allegations contained in paragraph 8 defendants reply that the statements therein contained as to the plan and purpose of standardization are not as alleged, but the true facts are that such plan includes the organization of a staff for each sanitarium so standardized, which signifies the selection of certain named physicians, who alone are authorized to practice in such sanitarium, and who shall have oversight and direction of the practice therein, and which contemplates also a thorough and complete record of all patients treated in standardized hospitals, and likewise adequate laboratory service, it not being true, as alleged by plaintiff, that such plan of standardization favors an open staff, but favors a restricted staff, and said plan also contemplates that the members of said staff shall meet at regular intervals, criticize their practice, and eliminate from their members such as may prove to be incompetent and unfit, the plan likewise contemplating finally specialized work as a basis for competency and fitness; that the plans and suggestions of the American College of Surgeons is not authoritative, but only recommendations, and each hospital which is a private corporation, like St. Anthony's Sanitarium, determines for itself whether or not it

will carry out said, plan and what details of standardization it will adopt, which said sanitarium did adopt as a plan within its own province, and of its own initiative, as it had a legal right to do, without consulting the convenience of plaintiff or defendants, and defendants deny that said standardization resulted from any conspiracy or boycott as against the plaintiff, or that defendants are making a cloak or subterfuge of said plant to injure the plaintiff, and deny that it is an effort upon the part of defendant doctors to monopolize the practice of said sanitarium to the exclusion of plaintiff, and they deny that the selection of said board or staff to the exclusion of plaintiff was arbitrary, malicious, and without justification, and deny that plaintiff had the qualifications and training, and had as much or more training and experience in surgery and hospital work as most of said board.

"(10) Replying to paragraph 9 of plaintiff's petition, defendants deny the matters therein contained, and state that the exclusion of plaintiff from said sanitarium is not illegal, nor is it an effort to limit and control any rights of plaintiff granted by the state of Texas, that in truth and in fact his license and registration thereof have only the effect to license him to practice osteopathy, which is not a branch of the school of medicine, but consists in rubbing, pulling, and kneading with the hands and fingers certain portions of the body, and pulling and manipulating the limbs of those afflicted with disease, and say that osteopathy teaches neither therapeutics, materia medica, surgery, nor bacteriology, and therefore plaintiff is not entitled to the protection of the law as a surgeon, or as a doctor of medicine, and, even if he were a regular physician, they say that such plan of standardization is not a discrimination against him, nor a violation of the penal laws of this state, and they deny that they have sought to molest the plaintiff, or to prescribe limitations under which he may practice his cult, or that they have, through conspiracy or boycott, or otherwise, placed malicious and unjust restrictions upon him or his practice.

"(11) As to the allegations contained in paragraph 10 of plaintiff's petition, defendants deny that they have pursued any conspiracy or any purpose to injure plaintiff by making or circulating any false or fraudulent statements among his friends and acquaintances and patients that he had secured his diploma by mail, that he is inefficient and that he is irregular and offgrade, or that this was in opposition to him, but say that they have not pursued the plaintiff or formed a conspiracy and purpose to injure the plaintiff and break down his business, that they have simply pursued toward him and his kind a policy and spirit of reticence and indifference, and have simply ignored his efforts to foist himself upon them and their associates; that they deny they have wrongfully and maliciously refused to assist plaintiff in his surgical work, and circulated the report that they did so on account of his lack of skill and inability, and that they did this through a plan or conspiracy to injure plaintiff in his business, or that they knew that he was more skilled and better qualified for surgery than many physicians whom they assisted, or that they know that a proper study of osteopathy requires a more intimate knowledge of anatomy than the ordinary practice of medicine, and they deny that such is a fact, but

217 S.W.—68

say that the true surgeon is a physician, and the man knowing nothing about medicine except anatomy is wholly unfit to practice as a surgeon, and say that a surgeon's education must include a knowledge of medicines and their effects, and especially with reference to the use and understanding of surgical instruments and the use of anesthetics and sterilizing agencies.

"(12) Replying to paragraph 11, the defendants repeat their denial of any illegal and unjust opposition, or any illegal and unjust combination, and deny that plaintiff has any special training, skill, or ability as a surgeon or hospital practitioner, and require strict proof as to the extent of plaintiff's surgical and hospital practice, and deny that he has suffered a loss of $5,000 by reason of the acts alleged by him in his petition.

"(13) As to paragraph 12 of said petition, the defendants deny that any of the allegations therein contained are true to the effect that, if permitted to practice in the St. Anthony Sanitarium, he would build up a still greater and more lucrative practice in all lines, or that defendants have been pursuing, or will continue to pursue, an unjust and illegal conspiracy against him, so as to deprive him of the fruits of his training, skill, and ability, to his damage in the sum of $5,000 per year. They admit that St. Anthony's Sanitarium is the only hospital in Amarillo, but require strict proof upon plaintiff's part as to the allegation that plaintiff's patrons have become accustomed to the use of said sanitarium, but defendants deny that plaintiff's patients or anyone else have a legal right to use or demand the use of St. Anthony's Sanitarium, since the same is a private corporation, especially when such demands are contrary to the rules and regulations of said sanitarium governing the practice therein. They say that, while said St. Anthony's Sanitarium is willing and anxious to serve the sick and suffering of the world, they recognize the fact that indiscriminate service and unregulated service in said institution will operate as an imposition upon the patients who come to said hospital for treatment, and that they are not desirous of serving the plaintiff or others who seek to bring into said sanitarium the methods known as osteopathy, and deny that they are desirous of having the plaintiff to be among the practitioners at said sanitarium, at the expense of their plans and purposes to standardize said hospital, and deny that their only objections to have plaintiff practice in said sanitarium is the alleged coercion, threats, and demands of defendant physicians, and deny all such allegations of coercion and business interference upon the part of defendant doctors, and they deny the existence of any such conspiracy, but say that what the authorities in charge of said St. Anthony's Sanitarium have done is in line with the plan of the Catholic Hospital Association, which has at all times given encouragement to said plan as sought to be put in force in said St. Anthony's Sanitarium, and they deny that they desire to have said plan of standardization abolished so as to give plaintiff admission into said sanitarium, and they state that said plan of standardization was accomplished with the concurrence and upon the initiative of Mother Nativity and Sister Denis, who are in charge of St. Anthony's Sanitarium.

"(14) They deny the allegations contained in

paragraph 13 of plaintiff's petition to the effect that the plan of standardization of the St. Anthony's Sanitarium was not bona fide as to the requirements of the staff or the board of practitioners, and that there were any doctors conspiring against the plaintiff, and deny that he had the qualifications stated by having been previously called into consultation with other surgeons in Texas, who were members of medical associations, and in other standardized hospitals, as alleged by the plaintiff."

The hearing before the judge was upon the petition and affidavits of various parties filed at the hearing. The supporting affidavits of the respective parties were in accord with their pleadings. The affidavit of Mother M. Nativity, as manager of the St. Anthony Sanitarium, a Catholic institution, associated with other Catholic hospitals under the name of Catholic Hospital Association of the United States and Canada, is to the effect that she was familiar with the movement known as standardization of hospitals. So far as she knew, the movement to standardize did not originate in the purpose on the part of any one to discriminate among different schools of medicine, but solely for the purpose of rendering improved service to the sick, increasing facilities for the use of patients and physicians, especially in the matter of laboratory service, and increasing the efficiency of the physicians and surgeons practicing in said hospitals, and stimulating the study of medicine and surgery among physicians, subjecting the work and practice of physicians and surgeons to the supervision and direction of the most competent and available surgeons in such supervisory work, and for the prevention of abuses and protecting patrons from being imposed upon by unworthy and incompetent persons; that the effort to standardize St. Anthony's Sanitarium was not at the instigation of any particular physician or physicians in Amarillo, but was in line with similar actions taken by other Catholic hospitals and after consulting with and at the suggestion of affiant's superiors, and that she took the initiative in standardizing said hospital, by calling together defendants G. T. Vineyard, G. T. Thomas, A. F. Lumpkin, R. D. Gist, E. H. Johnson, R. S. Killough, R. L. McMeans, I. Rasco, and E. T. Lawler, asking them to act as an executive committee or initial staff, having addressed a letter to them to that effect on May 22, 1919, requesting them to meet the following Tuesday evening for the purpose of organizing the staff. In pursuance of the invitation all of said physicians met at the appointed time at the sanitarium and proceeded in the organization of a staff and in the adoption of rules and regulations and in the election of officers and the effecting of a permanent organization; that at the conclusion of said meeting the staff advised her of the names of the physicians who had been selected for the staff, and she accepted and approved the selection made; that after said staff had been organized names had been added to the same from time to time, as said applicants had been deemed worthy by the members of the staff, and she had accepted and recognized the members of the staff as proper and qualified persons to practice medicine and surgery in the sanitarium, and that she had been satisfied with the work of the staff, and had been and is desirous of continuing the organized staff and continuing the standardization of the sanitarium; that when the staff was organized and the list composing it was furnished to her plaintiff's name was not on such list, and she acquiesced in the omission of his name as well as other persons who had been omitted from said list, with full knowledge of the result of same and believing that it would be to the best interest of said sanitarium and the interest of its patients to proceed with the said organized staff in charge of the medical and surgical work of said sanitarium; that she had no personal objections to plaintiff and no unkind feelings towards him, but it was her wish that the staff be composed of regular physicians and members of the Potter County Medical Association, and, knowing that plaintiff was not a member of said Association, and not a regular physician, but an osteopath, she concurred in the judgment of the medical staff that it was not proper that he should practice either osteopathy, medicine, or surgery at said sanitarium; that the standardization of St. Anthony's Sanitarium and the organization of the staff was not undertaken for the purpose of injuring plaintiff, but was undertaken in good faith for the purposes above stated, and was carried out without malice or ill will or any desire to injure any one; that it was important in the organization of the staff to have unity among its members so as to promote the work of the physicians and surgeons and limit the practice of persons who are inefficient and incompetent and for the proper training of nurses; that, so far as she knows, none of the physicians composing said staff or practicing in said sanitarium have presumed to dictate to the nurses whose patients they should wait upon, and that no coercion has been practiced by her or any of the defendants, and no threats have been made against her by any of the defendants to induce her to deny plaintiff the privilege of said sanitarium; that she has at all times acted freely and in accordance with her best judgment and for the best interests of the sanitarium and the patients therein; that she does not believe it best or to the best interest of the sanitarium or persons coming to said sanitarium for treatment that the standardization of said sanitarium should be abandoned or that the selected staff of physicians should be dissolved, or that the doors

of said sanitarium should be thrown open to all persons who would practice therein, and she does not desire to see this done by court action or otherwise. The defendant doctors' affidavits support their answer with reference to the standardization of the sanitarium and their denial of the purpose to injure the appellant, etc.

[1-3] The first assignment asserts there was error and an abuse of sound discretion in sustaining the motion to dissolve the temporary injunction as to the defendant Congregation of the Sisters of the Incarnate Word after it had withdrawn from the sworn answer and the motion to dissolve the injunction and declare its position to be neutral. This assignment is based upon the answer of the sanitarium filed by its attorney, J. G. Sullivan, in which it is stated the Congregation withdraws from the answer filed by all the defendants. The last answer so filed excepted generally to the plaintiff's petition, and denies each and every allegation therein, and says the same are not true in whole or in part. It is further stated in the answer:

"That the position of this defendant [the Congregation] is, and has always been, neutral in the matters involved therein, and they desire to remain so."

This answer was filed September 17, 1919. The motion to dissolve appears to have been made by all the defendants, and was presented to the judge September 9th; whereupon the hearing was set for September 19th. Attorney Sullivan's name does not appear to have been signed to the motion. On September 15th Mother M. Nativity and Sister M. Denis made an affidavit to the effect that they signed the answer at the request of the defendant doctors, who stated to them they were signing to that part of the answer referring to the governing of the sanitarium, they not understanding that the affidavit went to the entire paper; that Sullivan, attorney for the Congregation, notified them that some of the matters alleged therein are in dispute, about which they are not informed. They therefore ask to be relieved of their said affidavit, except as to the matter relating to the governing staff of the sanitarium; that their attitude regarding the subject-matter is neutral; that they had not assumed to employ attorneys therein, such having been done by the Superior of the Congregation. They did, however, confer with Mr. Ryburn, when the writ was originally served on them. Mother Mary John, Superior General of the Congregation, on September 16th made affidavit that as such head she alone had authority to employ attorneys; that Sullivan was employed by her to represent the sanitarium in the suit. F. M. Ryburn, one of the attorneys signing the first answer heretofore set out, by affidavit states that he was requested by Mother M. Nativity to represent the Congregation in the litigation, and it was agreed he should do so; that he was assured of her authority in the conference with her July 24, 1919; and that since such time he had received no communication revoking the authority. Mother M. Nativity was one of the local managers of the sanitarium. It will be perceived from the above the Congregation did not withdraw from the motion to dissolve. By the affidavit of its local manager it is shown that it still asserted the truth of the first answer as to the governing staff of the sanitarium, but as to other matters in the answer they have no personal knowledge. The answer filed by Sullivan denies all the allegations in the petition and while it is asserted therein the Congregation's attitude is neutral, we do not think such assertion should be construed as meaning that the plaintiff was entitled to amendatory writ of injunction or any other, or to the damages sought to be recovered. The evident meaning is they were neutral in the controversy between the doctors or between the different schools of healing. We think the trial court was justified in finding that the Congregation was still insisting upon a dissolution of the injunction; that it was not consenting to the writ or to the restraining order. The answer presented by Sullivan denies each and every allegation and says they are not true in whole or in part. The hearing on the motion was had upon affidavits filed by various parties as well as upon their respective answers. Our statutes (Rev. St. 1911, art. 4663) provides the defendant to an injunction may answer, as in other civil actions, but no injunction can be dissolved unless the answer denying the same has been verified. Article 4664 provides motions to dissolve may be heard in vacation after answer filed. If it was necessary that each defendant file a sworn answer before the motion to dissolve could be acted upon, we think the effect of the Congregation's answer, together with the affidavits of the Sisters, are in substantial compliance with the statute. It will be seen that the affidavit of Mother M. Nativity and Sister M. Denis is to the effect that they only wished to be relieved from that portion of the answer of which they had no personal knowledge. They expressly adhered to that portion of the answer which relates to the governing staff of the sanitarium. In addition to this affidavit these Sisters filed affidavits of denial of the most material portions of the petition with reference to the formation of the governing staff, as will be perceived from our original statement. These affidavits were filed with the answer and before the motion was acted upon and reached the material matters in controversy, and were, we think, a sufficient compliance with the statute. Gibson v. Sterrett, 144 S. W. 1189; Brightman v. Fry, 17 Tex. Civ. App. 531, 43 S. W. 60. The

general rule is that an injunction granted against several defendants will not be dissolved until all the defendants implicated have fully answered denying the equities. But there are exceptions to this rule:

"Where, however, one of the defendants files his answer, and from his own connection with the subject in controversy and his own personal knowledge is able to lay such facts before the court as to render it apparent that the complainant establishes no equity, a motion to dissolve may be granted without the answer of the other defendant." High on Injunctions, § 1530, vol. 2 (4th Ed.).

As above stated, the effect of the answer of the Congregation was not to admit the matters set up by the petition, but the answer connected with the affidavit of the sisters was to negative such allegations as far as they assumed to know the facts. We believe the answer of the doctors in this case brings the case within the exception above quoted. The assignment will be overruled.

[4-6] The second assignment is to the effect that the court abused sound discretion in dissolving the injunction in that the petition and evidence show that appellant was a regularly licensed practitioner of medicine and surgery, as well as osteopathy, and well qualified and successful in such practice, with no disqualifying charges against him; that appellee doctors in their organized capacity, as well individually, in obedience to improper and illegal standards and otherwise, exercised an influence over the managers of St. Anthony's Sanitarium, to the injury of appellant, in depriving him of benefits to which he is entitled from his practice and as a licensed physician; that the resulting damages are incapable of definite determination, and not subject to full compensation in money. Under this assignment appellant presents nine propositions. Before considering this assignment specifically, we believe in the consideration of the case it will be helpful to keep in mind the rules governing the action on motion to dissolve a temporary injunction. An order dissolving an injunction is ordinarily interlocutory. Smith v. Ryan, 20 Tex. 661; Green v. Banks, 24 Tex. 522. On motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive, is taken as true. Burnley v. Cook, 13 Tex. 586, 65 Am. Dec. 79; Dawson v. Baldridge, 55 Tex. Civ. App. 124, 118 S. W. 593. While a complete denial under oath of all the equities in the bill does not entitle a party to the dissolution as a matter of law, it places the whole matter within the sound discretion of the court to dissolve the injunction or not, as the equities of the case may require. Friedlander v. Ehrenworth, 58 Tex. 350; Hart v. Mills, 38 Tex. 517, and authorities supra. The answer in this case seriatim and specifically denies the equities set up in plaintiff's bill, and hence we are authorized to take the statement of the answer as true.

[7] It is appellant's contention that the appellee doctors could only refuse business relations with appellant as individuals, and in their organized capacity could not influence others against him, and that appellant has the right to the fruits of his skill in his chosen profession, free from the wrongful interference by appellee doctors, whether protected by and in obedience to their self-constituted standards of medical practice or ethics, or otherwise. The answer denies any conspiracy to deprive appellant of the use of the sanitarium, and denies the specific acts charged. They deny that they demanded of the authorities in charge of the sanitarium that appellant be excluded from practicing therein, under a threat to withdraw their patronage and establish an opposition, or threatened the nurses therein and sought to prevent, by threats, such nurses from assisting appellant, or as an association threatened expulsion of any members assisting the appellant, or that they promulgated a rule, with intent to injure appellant, to the effect that in major operations there should be present at least three physicians, or that they procured the standardization of the sanitarium with such intent. The appellees assert the organization to which they belong seeks the advancement of the profession and to improve ethics, etc., and all its rules were so adopted. We think, therefore, the answer refutes any wrongful intent or that they did the acts as charged wrongfully. It seems to be appellant's contention that his exclusion from the organization and appellees' refusal to affiliate with him and holding that his license or diploma as an osteopath did not entitle him to fellowship with them influenced others against him and deprived him of the fruits of his preparation as a practitioner. If appellees were acting to further their legitimate purpose or to advance the practice of their profession, this, we think, would be justified, even if it had the result claimed by appellant. Unless the organization was itself illegal or the methods used by it were wrongful, appellant has no just complaint. The Potter County Medical Association is composed of what is known as regulars, the purpose of which, appellees answer, is not to injure any one, but to elevate the standards of practice and advance the science of medicine and surgery. It is provided by such association that an applicant for membership must be of good moral character and licensed to practice under the laws of the state of Texas; that he must not support or profess an exclusive system of medicine or advertise as such. The appellant was admittedly an osteopath, and his license to practice was obtained upon a diploma from a school of that system. His advertisement and card so gave his school of practice.

[8-11] A voluntary association has the pow-

er to enact laws governing the admission of members and to prescribe the necessary qualification for membership. Mayer v. Stonecutters' Association, 47 N. J. Eq. 519, 20 Atl. 492. Membership therein is a privilege which the society may accord or withhold at its pleasure, with which a court of equity will not interfere, even though the arbitrary rejection of the candidate may prejudice his material interest. McKane v. Adams, 123 N. Y. 609, 25 N. E. 1057, 20 Am. St. Rep. 785; Branagan v. Buckman, 67 Misc. Rep. 242, 122 N. Y. Supp. 610. Courts sometimes interfere where members have been wrongfully excluded or expelled, but as a rule they do not interfere with the right of an association to make laws or rules unless they are against good morals or violate the laws of the state. The courts of this state recognize the general principles above announced. In the case of Manning v. San Antonio Club, 63 Tex. 166, 51 Am. Rep. 639, it is said:

"But we think it has been generally held that clubs or societies, whether religious, literary, or social, have the right to make their own rules upon the subject of the admission or exclusion of members, and these rules may be considered as articles of agreement to which all who become members are parties."

This rule is reaffirmed in Brown v. Harris County Medical Association, 194 S. W. 1179. See, also, authorities therein cited.

It was held by our Supreme Court, in the case of Railway Co. v. Thompson, 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250, that, if a member of the Brotherhood of Locomotive Engineers violated its constitution or laws, and the order fairly and honestly passed on the testimony as to such violation, their action would be final and conclusive, and the aggrieved party could not recover damages because of his expulsion. It was, however, also held in that case a rule which prohibited a member from testifying in court as a witness would be a nullity and would not be enforced in any court. We think such a society as the Potter County Medical Association is legitimate and lawful. If it is an organization which is largely composed by the appellee doctors, and if it does directly or indirectly affect the material interest of appellant or in some degree affect him as a nonmember, this would not justify the courts in denouncing it as an illegal or unlawful conspiracy. The association has the right to advance its purpose or interest and that of its members by all legitimate means. If it deemed appellant an osteopath, and that as such he was supporting an exclusive system, the association and its members were within their rights, under its rules, in rejecting him as a member. They also had the right to refuse to assist him in operations. They could, if they deemed it to the interest of medicine or surgery, or the welfare of humanity, agree among themselves not to assist appellant in surgery if they did so in good faith and with

no intent to injure appellant. To compel appellees to receive appellant into fellowship and accept his view would be to impose his will upon appellees and to force the medical world to accept his theory of the healing art. Courts have no such power. Appellant has an equal right to ignore the appellees' theories and practice, as they have his. Each has selected his school of practice, and neither has the right to impose upon the other his peculiar views, but each are free to choose his or their own, and follow the method believed by them to be the wisest and best. Having so elected, there could be no just ground of complaint that in the competition of these schools and as resultant therefrom loss of material interest is sustained or professional reputation suffers or is eclipsed. If without malice or evil intent the appellees did interfere with the privilege of appellant, if they did so to serve some legitimate right or interest of their own, they could do such acts themselves or cause others to do them so long as no definite legal right of appellant is violated. Delz v. Winfree, 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755; Id., 6 Tex. Civ. App. 11, 25 S. W. 50; Gregg v. Massachusetts Medical Society, 111 Mass. 185, 15 Am. Rep. 24; Insurance Co. v. Griffin, 202 S. W. 1014; Sheehan v. Levy, 215 S. W. 229; Hunt v. Simonds, 19 Mo. 583; Orr v. Home Mutual Insurance Co., 12 La. Ann. 255, 68 Am. Dec. 770. We cannot see how a rule by appellee doctors that there should be present at least three physicians at a major operation could affect appellant. He was not a party to such a rule; he was under no legal or moral obligation to observe it. Before the standardization of the sanitarium, appellant alleges he was admitted to practice therein. The rule does not appear to have been enforced or adopted by the sanitarium. The rule could have applied only to appellees or the association, of which appellant was not a member. If appellees saw proper to burden themselves with such a restriction, they alone have a right to have it repealed.

[12] But appellant appears to rely principally upon the statutes authorizing the licensing of doctors as establishing that the acts of appellee doctors and the affiliated medical associations, the State and the American, are illegal in refusing to recognize him in their association, practice, etc. It is contended that their act in ignoring him as a regular physician is discriminatory and violates the Constitution and the law. The petition shows appellant in 1898 graduated from a school of osteopathy at Kirksville, Mo., and under his diploma so obtained he practiced his calling until 1907, when the act establishing a medical board for Texas was passed. He then filed his diploma and obtained from the board his license, which described him as a doctor of osteopathy, giving him a right to practice medicine and surgery in the state of Texas. This certificate

was filed with the district clerk of Potter county, as required by law, in 1910, accompanied with his affidavit giving the school of practice which he professed. After that date it appears he attended other schools for short terms, and also lectures and clinics, but obtained no diplomas. His cards advertise him as a practitioner of osteopathy, medicine, and surgery. The statute in question was passed in 1907, creating a board of medical examiners. In article 5733 it is provided that the word "medicine" shall have the same meaning as given in article 5745, which article provides:

"Any person shall be regarded as practicing medicine within the meaning of this law: 1. Who shall publicly profess to be a physician or surgeon and shall treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to affect cures thereof; 2. Or who shall treat or offer to treat," etc.

Article 5736 requires the authority to practice issued by the board to be registered with the district clerk of the county in which the physician resides, "together with his age, post office address, place of birth, school of practice to which he professes to belong, subscribed and verified by oath." Article 5741 requires an examination for license on anatomy, physiology, pathology, bacteriology, physical diagnosis, surgery, obstetrics, gynæcology, hygiene, and medical jurisprudence. Article 5742 provides:

"Nothing in this law shall be so construed as to discriminate against any particular school or system of medical practice."

Appellant assumes, because he has a license which designates him as authorized to practice medicine and surgery, that he therefore should be treated by the medical associations as men of their own school. The license was issued under the law defining medicine as a treatment of any "physical deformity, or injury or by any system or method." This may exclude the idea of medicine as popularly understood. The act seems, for convenience, to have classed all the healing arts under one term, "medicine," whether it be manipulation of the muscles, bones, or the like, or by alapathic doses of medicine, or the little homeopathic pill of the homeopath. It will be seen, as suggested by the Supreme Court of the United States, the board of medical examiners does not examine in therapeutics or materia medica; and the answer in this case shows osteopathy does not teach such branches or practice them, and some other branches of medicine which the school of regular physicians requires. The law in question, we think, while authorizing the licensing of practitioners from various schools without discrimination, nevertheless recognizes there are different schools of practice, but only for the purpose of permitting the practice of the different systems—to grant licenses without

seeking to determine the true system of practice, or that any particular one shall be licensed to the exclusion of others. Ex parte Collins, 57 Tex. Cr. R. 2, 121 S. W. 501; Collins v. Texas, 223 U. S. 288, 32 Sup. Ct. 286, 56 L. Ed. 439. The Constitution prohibits the Legislature from passing laws giving any one school of medicine a preference, and the law in question evidently sought to obey that mandate, as it provides no school of medicine shall have a majority on the board of examiners, and nothing in the act should be construed as to discriminate against any particular school or system of medical practice. The law in question was concerned in licensing practitioners of whatever school by the board appointed for that purpose, who could not discriminate between the systems. The license to practice medicine is a privilege or franchise granted by the government. Morse v. State Board, 57 Tex. Civ. App. 93, 122 S. W. 447. We do not think it was the purpose of the act or the constitution to force one system of medicine to recognize all other systems as equal to its own, or to force it to affiliate with, or accept members from other systems into its association under a penalty of mandamus, injunction, or damages, on the ground of discrimination. Neither do we think individuals or corporations are required to employ or treat all as equally efficient or scientific, nor as being prohibited to exercise a preference or discrimination in employment or treatment of the different schools. The law in question is a shield, not a sword. It cannot be made an instrument to force all others to treat a particular system as the equal of another. The Constitution and the law in question were mainly intended to protect different schools of practice against oppression or from discrimination by the government. They do not protect such schools against themselves, or against their own choice of methods. Manning v. San Antonio Club, 63 Tex. 171, 51 Am. Rep. 639.

[13, 14] We believe it to be the right of the sanitarium to refuse business relation with appellant, if it sees proper to do so, and also to adopt such regulations as are proper or deemed by it necessary or expedient to improve its efficiency and standards of service therein and to require of those using its equipment that they possess specific medical learning and equipment in order to receive a membership on the medical staff. To accomplish this it was at liberty to employ a committee, as it did in this case, to standardize the sanitarium. If in good faith, with no evil intent to injure or oppress, the appellee doctors who were so appointed did formulate the rules of standardization and name the staff as directed, they had the right to do so subject to no other control than the governing authorities of the institution. Many decisions might be cited to the above effect, but a few from our own state will illustrate the question: Donovan v. Railway Co., 64 Tex.

519; Robison v. Pine Lands Association, 40 ,S. W. 843; Wills v. Central Ice Co., 39 Tex. Civ. App. 483, 88 S. W. 265; Railway Co. v. Greenwood, 2 Tex. Civ. App. 76, 21 S. W. 559; Kruegel v. Murphy, 168 S. W. 983; Green v. Bennett, 110 S. W. 115; Grand Lodge, etc., v. Schuetze, 36 Tex. Civ. App. 539, 83 S. W. 241; Brown v. American, etc., 97 Tex. 599, 80 S. W. 985, 67 L. R. A. 195; Palatine Insurance Co. v. Griffin, 202 S. W. 1014, and authorities heretofore cited. The answer of appellees in this case shows there was no conspiracy such as is denounced by the law in performing the service for the sanitarium to which they were appointed, or that in doing so they invaded a legal right of the appellant. This court's view on conspiracy is discussed by Mr. Justice Boyce in the case of Palatine Insurance Co. v. Griffin, supra. We feel unable at this time to add further to what was there said. Many of the authorities are collated and reviewed in that case. Where there is no legal right interrupted, there appears to be no cause of action. For a case in which this principle is recognized see Roberts v. Clark, 103 S. W. 417.

[15] The third assignment complains at the action of the court in refusing to entertain or permit the appellant to file a supplemental petition. This pleading is composed of many exceptions to the answer and allegations in the nature of confession and avoidance. Many of the special exceptions should have been sustained, perhaps, but yet the facts set up in the answer would not have been affected thereby. We deem it unnecessary to discuss this assignment or state what the proper practice should be or is in cases of this kind.

We think no reversible error is shown. If the supplement had been filed the result would have been the same. Herron v. De Bard, 28 Tex. 602. We cannot say the court abused his discretion in dissolving the injunction. It is not apparent that appellant will lose any rights which would otherwise accrue to him by the continuation of the injunction. The answer, as we conceive it, shows him to have no such right as will authorize a court of equity to interfere.

The judgment will be affirmed.