GRAND LODGE ORDER SONS OF HERMANN OF TEXAS v.
MRS. ANNA SCHUETZE.

Decided October 12, 1904.

1.—Conspiracy—Wrongful Act.

Intent to injure another can not make actionable as a conspiracy a combination to perform acts within the legal right of the parties combining to effect them.

2.—Benefit Society—Membership—Dissolution and Reorganization of Lodge.

No cause of action was shown against the grand lodge of a benefit society for permitting a subordinate lodge to disorganize and to reorganize itself in accordance with the regulations of the order, though this was done by the members of such subordinate lodge for the purpose of getting rid of a member distasteful to them and whom they left out in reorganizing.

Appeal from the District Court of Travis. Tried below before Hon. Geo. Calhoun.

*W. M. Walton, William Brueggerhoff,* and *West & Cochran,* for appellant.

*Fiset, Miller & McClendon,* for appellee.

KEY, ASSOCIATE JUSTICE.—The Grand Lodge of the Order of the Sons of Hermann is a benevolent association and has a charter as a private corporation. There are subordinate lodges, to the membership of which women are eligible.

In 1902 a subordinate lodge existed at New Braunfels, Texas, known as Lodge No. 12, and Mrs. Anna Schuetze was a member of that lodge. On the 11th day of February, 1902, while Mrs. Schuetze was absent from her home, which was in the town of New Braunfels, some person entered her residence and stole $385 from a trunk.

On the following day she reported her loss to the sheriff, and told him that she suspected her next-door neighbor, a Mrs. Wenzel, of the theft, because she had a key to her house and knew where the money was. She made the same charge or expressed the same suspicion to the county attorney and to two other persons. She testified to these facts on the stand, but denied that she demanded that Mrs. Wenzel's coffin be searched. Many persons in New Braunfels suspected Mrs. Schuetze's son of the theft of the money.

Soon after the theft Mrs. Wenzel died, and the sheriff testified on the trial of this case that Mrs. Schuetze demanded that her coffin be searched for the stolen money, and the county attorney made a similar statement under oath before Lodge No. 12, at a meeting held April 13, 1902.

On the second day after Mrs. Wenzel was buried $355 of the stolen money was returned to Mrs. Schuetze through the medium of the postoffice, but the identity of the thief was not disclosed. Before the March meeting was held several of the female members of the lodge

had become incensed at Mrs. Schuetze on account of her alleged conduct towards Mrs. Wenzel, and had signified their determination not to remain in the lodge with her; and they expressed a like purpose at the meeting.

Mr. Roper, the secretary of the lodge, informed Mrs. Schuetze of the existence of the feeling against her among the members, and advised or requested her to withdraw her membership, which she declined to do. She attended the meeting of the lodge on March 30th, and was again requested to withdraw and again refused. However, she did withdraw from that meeting, and, being in arrears, the lodge suspended her for nonpayment of dues. Soon thereafter she took steps to relieve herself from suspension, and delivered to Mr. Roper, the secretary, the necessary amount of money to pay her dues. In the meantime Roper had an interview with Mr. Bauer, the grand secretary of the Grand Lodge of the Order of the Sons of Hermann, concerning the matter, and when he received the money sent by Mrs. Schuetze to pay her dues, he sent it to Mr. Bauer, accompanied by the following letter, dated April 3, 1902:

"Inclosed send you letter and money order from Mrs. Schuetze. As she was suspended March 31, 1902, for nonpayment of dues, I request your advice. If this member must stay in our lodge, the same is as well as disbanded; therefore I ask your advice."

To that letter Bauer replied as follows:

"San Antonio, April 5, 1902.—Mr. Carl Roper, New Braunfels, Texas: Call for to-morrow week, on the 13th of this month, an extra meeting of the lodge. I will at that time come with Brother Hoff to adjust the matter to the satisfaction of the lodge; perhaps Brother Alterman will be there also. I send the postal money order to Mrs. Schuetze with the statement that the lodge will have an extra meeting on the 13th to decide if under the conditions the same shall continue. Until then you may receive the dues of suspended members."

And at the same time he wrote to Mrs. Schuetze as follows:

"Dear Mrs. S. and Sister: I received a letter from brother secretary of the lodge at your place, with letter of yours and money order for seventy-five cents inclosed. In regard to the suspension, will say the same was legal acording to article 8, section 1. The dues for the month of March ought to have been paid by the first of March already. As you did not pay within fifteen days, you are bound to be suspended according to article 8, section 2; then indeed you had thirty days' time to become reinstated after payment, provided no sickness could have been proven to you. As I do not know how the matter stands, I have requested Brother Roper to call a special meeting on the 13th inst. to investigate the matter. The lodge now wants to break up, in case means and ways can not be found possible to get the disagreeable matter out of existence. Consequently, I return you your money order for seventy-five cents, and will do my best to relieve the matter to every one's sat-

isfaction. With greetings in F. L. and F. J. Bauer, Grand Secretary."

Bauer also wrote to Alterman, the grand president of the grand lodge, and requested him to attend the meeting of Lodge No. 12 on April 13th, and apprised him of the discord in that body.

The latter complied, and on April 13, 1902, the two grand officers and Hoff, grand deputy of the grand lodge, went to New Braunfels and met several members of Lodge No. 12 in the lodge room. Hoff called on Mrs. Schuetze in person and invited her to attend the meeting, but she declined. She also testified that he tried to persuade her to withdraw from the lodge, because she was disliked by the other members.

There is some controversy as to what the grand officers did and said at that meeting, and testimony relating thereto may be referred to hereafter. It is quite certain, however, that a majority of the members of the local lodge were unwilling to fellowship with Mrs. Schuetze, and they passed a resolution dissolving that lodge.

A petition signed by every member of Lodge No. 12, except Mrs. Schuetze, was thereafter presented to the grand secretary, asking for dissolution of that lodge, which he accepted, and that lodge was legally dissolved. Thereafter, by request, the grand secretary made application for all the members of the dissolved lodge, including Mrs. Schuetze, to affiliate with a sister lodge at San Antonio, which was granted.

In June following a new subordinate lodge was organized at New Braunfels. All the members and officers of the old lodge became members and officers of the new lodge, except Mrs. Schuetze, who was not invited to join. Some new members joined who had not belonged to the old lodge.

Thereafter Mrs. Schuetze brought this action for damages against the Grand Lodge of the Order of the Sons of Hermann, charging that it, acting by its president and secretary, had entered into a conspiracy with the officers and members of Lodge No. 12 to deprive her of her membership in that lodge, and that the dissolution of the old lodge and the organization of the new one was a scheme resorted to to accomplish that result.

The defendant filed a general denial and other pleas, not necessary to state.

There was a jury trial, resulting in a verdict and judgment for the plaintiff for $7500, and the defendant has appealed.

The appellant's brief presents many questions predicated upon the action of the court in ruling upon exceptions to the plaintiff's petition, and in giving and refusing instructions. It also challenges the plaintiff's right to recover anything; and, in effect, asserts that the uncontroverted facts show that the defendant is not liable. As we sustain this contention, we deem it unnecessary to consider all the assignments of error, and will proceed to state the reasons which lead us to the conclusion that the plaintiff has no case. And in so doing, some other

facts, and the testimony on controverted matters, may be adverted to; and we shall endeavor to place upon them the most favorable permissible construction in behalf of the appellee.

Omitting that relating to the issue of damages, appellee's counsel have summarized in their brief the testimony relied on by them as follows:

"The plaintiff testified that she was at the meeting of the local lodge on March 30th, and that Secretary Roper asked her to resign, stating that she had demanded that the coffin of Mrs. Wenzel be searched, and when she protested he said if she didn't withdraw voluntarily he would break up the lodge. That some of the sisters said they would discontinue paying their dues; that in her excitement she forgot to pay her dues and left the lodge. That the second day afterwards she offered the treasurer, Mrs. Galle, the lodge dues, and she said she had been instructed by Mr. Roper not to accept the money under any circumstances and she would get into trouble if she took it; that she went to the postoffice and received a registered letter from Mr. Roper, dated March 31st, in which he said that as she had failed to pay her monthly dues, she was suspended by request of the New Braunfels lodge. That on April 2d she procured a money order for the amount of the dues and mailed it to Mr. Roper, calling his attention to the fact that she had thirty days, under article 8, section 2, of the by-laws, to pay her dues and be reinstated; that she received a letter from the grand secretary, Mr. Bauer, dated April 5th, in which he said that he had received her letter to Mr. Roper with the money order; that her suspension was legal, but that she had thirty days within which to be reinstated, if no sickness could be proven against her, and that he had requested Secretary Roper to call a special meeting of the New Braunfels lodge for April 13th to investigate the matter; that the lodge wanted to break up, if no way could be found to get rid of the disagreeable controversy, and he consequently returned her money order.

"That on April 13th Grand Deputy Hoff called upon plaintiff and tried to persuade her to withdraw from the lodge because she was disliked by the other members, but she insisted that she had done nothing to deserve their dislike and would not withdraw. That Hoff then tried to get her to attend the special meeting on that day and she said she would do so, if she was receipted for her March dues and was relieved of her suspension. That she received a letter afterwards, dated April 21st, from Secretary Roper, in which he stated that the New Braunfels lodge had dissolved, and as she wanted to remain a member of the order, she would have to remit her money directly to the grand secretary. That she never had any notification of the formation of the new lodge and was not invited to join it. That when Mr. Hoff insisted on her going to the special meeting of April 13th, she did not think she had a right to go as a suspended member and she had gotten no written notice of the meeting. That she received a letter May 10th from Grand Secretary Bauer in which he stated that the New Braunfels lodge had been dissolved and the members of it had become affiliated with the

San Antonio lodge; that he requested her to pay her March, April and May dues to him and inform him if she would affiliate with one of the San Antonio lodges. That she received no written invitation or notice from Secretary Roper to attend the special meeting of April 13th.

"Mrs. Floege testified that she was a member of the New Braunfels lodge,.and was present at the meeting of March 30th when Secretary Roper asked plaintiff to voluntarily withdraw from the lodge. That Roper said if she would not withdraw he would break up the lodge. That she was also present at the special meeting of April 13th, when Grand President Alterman, Grand Secretary Bauer and Grand Deputy Hoff were present; that she had received a written notice to attend that meeting from Secretary Roper. That she heard at that meeting Alterman, Bauer and Hoff say they would remove the lodge to San Antonio for a while and they would notify the sisters if they would install a new lodge at New Braunfels. That they said at the same meeting they were going to come back and organize a new lodge in New Braunfels; that they also told the members that they would have to surrender their papers; that she continued all the time to pay her dues to the treasurer of the old lodge, Mrs. Galle. That she still had her membership certificate in the old lodge with the old name scratched out and the new name of the lodge inserted. That she didn't know if a new lodge was formed, but knows that she became a member of the new lodge by the name on the certificate being changed. That the same persons holding offices in the old lodge continued to hold offices in the new one and all of the old members were members of the new lodge except plaintiff. That at the meeting of March 30th the sisters said they wanted plaintiff out of the lodge, because she demanded that Mrs. Wenzel's coffin should be searched. That when plaintiff left the meeting on March 30th, Roper said he would call a special meeting and give the sisters notice; that the grand officers, Alterman, Bauer and Hoff, at the meeting of April 13th, all ordered that the lodge be dissolved and the membership transferred to San Antonio. That she had given her deposition before the first trial of this case and testified therein nothing about what was said at the April meeting about dissolving the lodge. That the reason that she did not so testify in the deposition was that she was under an oath not to divulge what transpired in the lodge, but when she saw how unjustly plaintiff was treated by her fellow members she determined to tell everything. That she was at the first trial, and plaintiff told her how the other witnesses had testified. That at the meeting of March 30th, Roper said he was going to call a special meeting by letters, and they would then discuss and deliberate over breaking up the lodge, because plaintiff should get out.

"Bauer, grand secretary, called by the plaintiff, testified that his deposition was taken in the case, and he declined to attach certain letters because it would take a good deal of time to copy them. That he had no copy of the letter he wrote to Roper, and Roper did not send his letter back to him. That he declined to attach to the deposition the

correspondence between himself and Roper, relating to plaintiff, because he did not have any business to do so and he expected to bring them to the trial; that he was at the meeting of April 13th; that before that he had returned to plaintiff her money order for dues, because he could not use it; and that, so far as he knew, her time for paying had expired and he had no business to receive the dues. That he received a letter dated April 3d, from Roper, in which he asked his advice, and stated if plaintiff must stay in the lodge it had as well be disbanded. That before receiving this letter he had a personal interview in San Antonio with Roper after the meeting of March 30th. That he didn't know why Roper refused to take plaintiff's dues. That he agreed to call the special meeting of April 13th to settle the matter, but it was unusual to call such meetings every time a member failed for a few days to pay her dues; that Roper said the lodge would break up if she stayed in it. That he did not call the special meeting to see if plaintiff had tendered her dues in time. That he considered, when he wrote plaintiff the letter of May 10th asking her to send her dues, that she was still a member of the order.

"That at the April meeting Grand President Alterman told the members that they ought to take plaintiff's dues, according to the by-laws, and the sisters declined to do so, and said they would break up the lodge if plaintiff remained in it. That he advised them not to dissolve. That the lodge did not dissolve on April 13th, and it took a resolution of the members to dissolve it. That Alterman gave no advice at the meeting of April 13th but he did the talking; that he was there all the time and did not hear Alterman say anything in the meeting, and if he had said anything he would have heard it; that he was the only officer that said anything about the matter. That the members of the local lodge said they were going to disband; that the lodge dissolved by every member signing a petition and Secretary Roper sent it to him; that Roper brought the minutes of the lodge over to him, and he turned them over with the money, charter and badges when the new lodge was formed. That he did not have the minutes or books of the lodge when he gave his deposition on February 28, 1903, but they were then in the hands of the lodge. That he gave Roper a receipt for the money and property of the lodge, dated April 29th, in which he acknowledged receipt of $61.50, death benefit fund, and $23.70 of dues for the months of April and May for fifteen active and four passive members. That he returned the money, books and all property when the new lodge was formed; that it was not customary to pay a month's dues ahead of time, but, as appears from this receipt, the May dues were paid in April. That Roper collected the dues in New Braunfels and paid it to him; that when the June dues fell due the new lodge had been established. That the certificates of the members of the old lodge were simply changed by inserting the name of the new lodge and they received the same certificates. That there was no

need to change the name of the lodge, but that it was at the members' request.

"That Alterman, the grand president, agreed to the reorganization of the new lodge and was present on April 13th, when the members said they would not stay together because of plaintiff being a member of the lodge; that he received an application to organize the new lodge, which document was originally dated May 1st, in pencil, and afterwards changed in ink to May 31st, and was signed by all the members of the old lodge except plaintiff, in ink, and afterwards the names of new members were added by him in pencil. That the application addressed to him to form the new lodge states that as it was too inconvenient to send the dues to San Antonio, the old members, except plaintiff, had concluded to again organize a sister lodge in New Braunfels, and they requested a new charter under the old name and the return to them of their property.

"That after the members of the old lodge decided to withdraw he made application in their behalf for them to be members of the San Antonio lodge, and that lodge by acclamation consented to take them all in, including plaintiff; that they applied, without transfer cards being issued, to be permanently members of the San Antonio lodge. That the grand officers were at the meeting of April 13th to try to settle the trouble and avoid discord. That he wrote to Alterman, grand president, about the matter on April 9th, in which he stated the situation and that the members did not want to have plaintiff in the lodge and would disband if she remained, and asked to attend the special meeting to assist in disposing of the matter. That he instructed Roper in a letter of April 5th to call the special meeting of April 13th, and in the letter told Roper that they would decide at that meeting if the lodge should continue, and advised him that until the meeting of April 13th he might receive the dues of suspended members. That Alterman at the meeting of April 13th advised the members that they had no right to get rid of plaintiff on the ground they made against her. That he did not advise them in reference to what course they should pursue in reference to plaintiff. That at that meeting nothing was said about a petition to transfer the members to the San Antonio lodge, but he received this petition afterwards, and by reason of this petition he made application to the San Antonio lodge to take these members in.

"Bauer's deposition was read, in which he stated that the old lodge was dissolved April 18th and the new lodge formed June 7th; that all the members of the old lodge were members of the new lodge, except plaintiff. It was shown that none of the certificates of the members of the old lodge was changed in any way, only they were transferred to the San Antonio lodge and afterwards to the new lodge at New Braunfels, except the old name of the New Braunfels lodge was stricken out and the new one written in its place. That the certificates were not transferred to the new lodge.

"Julius Schuetze testified that he was grand president of the defendant order of Texas for five terms, and was, when he testified, national grand president of the order in the United States; that two lodges can only amalgamate upon three-fourths of the members of each lodge voting for a resolution to that effect, and this could only be done at the meeting of the lodges. That it was a usage of the order, whenever a member was transferred from one lodge to another, that his certificate was transferred to the new lodge, and that the certificate of plaintiff shows on its face that she was transferred from the San Antonio lodge, where she originally joined the order, to the old New Braunfels lodge.

"Secretary Roper, called by plaintiff, testified that he was secretary of the New Braunfels lodge and custodian of its books and minutes; that he did not have the minutes at the trial; that his deposition was taken in February, 1903, and he stated when asked to attach a copy of the minutes that Grand Secretary Bauer had them. That he declined to give the details in his deposition of the happening at the lodge meeting of March 30th, because he expected to be a witness in court and he was unwilling to give the details in the deposition; that he stated in his deposition that Bauer had the correspondence between him and Bauer regarding plaintiff. That no charges or trial of plaintiff was had by the lodge, and he asked her to resign at the March meeting because she had wanted the coffin of Mrs. Wenzel searched, and he acted as spokesman of the sisters of the lodge at their suggestion. That he went to San Antonio about the 2d of April and told Bauer what had happened at the meeting of March 30th; that he told Mrs. Galle, the treasurer, not to take plaintiff's March dues, because he did not think she had a right to pay them after March 31st. That he thought plaintiff looked sick at the March meeting. That his only objection to plaintiff was what he had heard with reference to Mrs. Wenzel; that he did not notify her of the special meeting of April 13th, because he thought she was a suspended member. That they dissolved the lodge between April 13th and 21st at a meeting and voted to do so, but this occurred on April 13th; that there was a vote of suspension against plaintiff at the meeting of March 30th, but he did not have the minute book. That they held their meeting on April 13th, after the grand officers left, and they told the grand officers that the lodge would be dissolved if plaintiff remained in it. That the grand officers gave them no advice; didn't say anything about dissolving. That after the meeting he sent an application for a transfer card to Bauer with all the names of the members on it, except plaintiff's, and she was left out because she was suspended. That they did not move to San Antonio to get plaintiff out of the lodge, but because the members did not want any more lodges in New Braunfels. That he did not refuse to accept plaintiff's dues in order to force her out of the lodge. That when the lodge was reorganized he did not notify plaintiff to join; that he asked everybody else but her; that he changed the certificates of the members by striking out the old lodge name and inserting the new one in

its place. That Grand Secretary Bauer came over and installed the new lodge and its officers; that the books and property of the old lodge were returned to the new lodge and the only expense of organization was 50 cents per member for the purpose of getting a transfer card; that they got back all the money of the old lodge but that. That the change to San Antonio was not solely to get rid of plaintiff, but the lodge did not want any more lodges in New Braunfels, even with her out.

"Article 11, section 1, of the laws of the order require the payment by each member of $3.75 where a new lodge is established. The constitution of the sister lodges provides that it is the duty of the lodges to give to the grand officers proper respect and to obey the orders of same and execute their decisions in all matters of dispute; that it is the duty of the officers of the lodges to maintain sisterly love within its circle and to be always mindful of the motto, 'Friendship, Love and Fidelity.'

"It is also provided in article 3 of the constitution, section 2, that a person is admitted as a member upon application, and in section 3, that three black balls reject an application; in section 7, that sisters with certificates from the lodge to which they formerly belonged can be admitted to another lodge, but must pay $1.50 admission fees to be entitled to the sick benefit privileges. That the total admission fees for membership is $1.90.

"Article 6, section 1, provides that it is the duty of the president of the local lodge to see that all laws of the lodge are strictly followed. Article 7, section 1, provides that it shall be the duty of each lodge to see that its sick members are visited and pay them regularly the sick benefit and to fix a fine for neglect of duty in visiting the sick. Article 8, section 2, provides that if a member is delinquent in the payment of her dues for fifteen days after the same became due, she shall, at the next meeting, by resolution of the lodge, be suspended for thirty days and be notified of her suspension; that as soon as she pays her arrears within the thirty days, she shall be immediately reinstated in her rights as a member; that a suspended member can not, in case of sickness, be reinstated during sickness.

"The plaintiff testified that she was in good health when she tendered her dues to the treasurer, Mrs. Galle, and sent the money order for the amount of her dues to Secretary Roper. Julius Schuetze testified that plaintiff was in good health when she sent the money order.

"Article 9 of the constitution, section 1, provides that every sister who is sick shall, as soon as the sick committee finds that she is sick, be entitled to weekly sick benefits. That plaintiff's certificate of membership entitled her son to receive from the order $500 at her death. Article 19, section 7, provides that transfer cards entitling a member of one lodge to be admitted into another are only granted when the member moves her residence. None of the members of the New Braunfels lodge moved to San Antonio when they were admitted as members of the San Antonio lodge.

"Article 1 of the laws of the order, section 2, sets out the object and purpose to be as alleged in plaintiff's petition. Article 7 of the laws, subdivision A and section 1, provides that it shall be the duty of the grand officers to see that the laws of the order are complied with in every respect, and to watch over the local lodges and install the officers of the same and assist new lodges to enter the order; subdivision B, to see that all the laws and decrees of the order are carried out and complied with, and that all officers perform their duties.

"Article 12 of the laws, section 1, provides for the amalgamation of lodges upon a vote of a three-fourths majority of all the members of each lodge. Article 13, section 2, provides for disciplining of local lodges in cases of disobedience and opposition, and section 3 gives the grand president power to suspend lodges that refuse to perform their duties. Article 14 of the constitution of the order, in sections 1, 2 and 3, provides for the suspension and expulsion of a member guilty of unlawful conduct, provided a written complaint is preferred and a proper trial after due notice to the accused.

"Mrs. Geue, president of the New Braunfels lodge, testified that she was at the special meeting of April 13th, and that the meeting was called on account of the trouble with plaintiff. That she and the other members asked Roper to request plaintiff to resign at the March meeting on account of what she had said about Mrs. Wenzel. That there was no trial of plaintiff and no written charges against her. That the plaintiff denied that she had made the statements about Mrs. Wenzel. That they all paid their dues while transferred to San Antonio to Secretary Roper, and he receipted to them in their receipt book. That it did not cost her anything at all to affiliate with the San Antonio lodge, or to go back to the New Braunfels lodge. That the reason they wished to quit the old New Braunfels lodge and go to San Antonio was on account of plaintiff's conduct towards Mrs. Wenzel.

"Mrs. Ludwig testified that she was at the meeting of April 13th and that she remembered no resolution being passed at that time to dissolve the lodge. That the grand officers did not give them any advice at that meeting; that none of them said anything. Mrs. Rose testified that she was at the meeting of April 13th, and that it was not called on account of the conduct of plaintiff. Mrs. Merz testified that she was at the meeting of April 13th, and that the grand officers did not advise anything one way or the other; that Secretary Roper said they should keep the sisters in the lodge. That the grand officers did not say anything at all.

"John Hoff testified that he was grand deputy under the grand president of the sister lodges and was at the meeting of April 13th; that Roper and six ladies were there and there was no formal meeting.

"Grand President Alterman testified that he first learned of the Schuetze matter in the letter he received from Bauer, and he attended the special meeting of April 13th at New Braunfels. That they went to the lodge room about 4 o'clock and Roper and two or three ladies

were there, and then one or two other members came; that there was no quorum present, as it took seven to hold a meeting, but merely had an informal talk. That he told the ladies that unless they could show Mrs. Schuetze was sick at the time, they had no right to refuse to accept her dues, and if she should die, payment of her certificate could be enforced against the grand lodge. That the ladies stated that they didn't want to stay in the lodge any longer on account of Mrs. Schuetze's action in regard to having the coffin searched. That they would not asociate with her any more, and they would rather let themselves be suspended and go out of the order; that he said he had no authority to prevent it. That they gave the ladies no advice about disbanding the lodge nor about being transferred to any other lodge. That after that Bauer wrote him that the lodge had been dissolved, and that the members had taken a transfer card to the San Antonio lodge. That a new charter was granted the new lodge. That when you establish a new lodge, either the grand president or one of his deputies must agree to it. That there are 240 lodges and 8000 members of the order in the State.

"Grand Secretary Bauer further testified that he acted as deputy grand president in establishing the new lodge at New Braunfels, and that he was Alterman's deputy. Alterman further testified that while he had a right to arrest a lodge, that is, withdraw its charter, he did not think that there was any ground for doing so in the present instance. That he had made no suggestion at all at the meeting of April 13th as to what action the lodge should take about Mrs. Schuetze; that he supposed Bauer heard all he said, but it rained hard and you could not hear very well in the room."

We add that on May *10th,* 1902, the grand secretary sent Mrs. Schuetze the following letter:

"Dear Madam and Sister: As Brother Roper possibly has informed you, the New Braunfels sister lodge No. 12, O. D. H. S., has dissolved, and wishes to affiliate with the sisters at this place, and have paid their dues for April here. As I presume you will remain with the sister lodge, I request you to pay your dues for March, April and May to me, and advise me if you will again affiliate with one of the lodges here, or if you will pay your dues directly to me. With brotherly greetings in F. L. and F. J. Bauer, Grand Secy."

Various provisions of the constitutions and by-laws of the grand and subordinate lodge were put in evidence, but we do not regard it as necessary to copy them here.

It is quite clear, we think, that the dissolution of Lodge No. 12 was legal. It may be that the other members of that body, in bringing about that result, were actuated by malice towards Mrs. Schuetze; but when a legal right exists, the law does not award damages on account of the motive which prompts its exercise. Ellis v. Valentine, 65 Texas, 548. A creditor whose claim is due may decline to accept ample se-

eurity and sue his debtor, although apprised of the fact that by so doing the debtor will be forced out of business and sustain loss; and though actuated by a malicious desire to accomplish that result, he can not be held liable for damages. And, while the testimony fails to show malice on its part, the same may be said as to the grand lodge, in so far as its official action may have been necessary to accomplish the dissolution of the subordinate lodge. It had the legal right to sanction the disorganization of that lodge, and can not be held liable for damages because its officers may have acted upon improper motives in accepting the disolution of the local lodge. And so also as to the formation of the new lodge without including Mrs. Schuetze as a member. It was the legal right of the members composing that body, and of the grand lodge and its officers, not to invite her to its membership, regardless of the motives by which they were actuated; and the exercise of that right, upon what other motive, did not fix legal liability for damages against the grand lodge or anyone else.

The question of conspiracy is elaborately urged in the petition upon which the case was tried in the court below, and in the brief submitted on behalf of appellee in this court. In Delz v. Winfree, 80 Texas, 400, our Supreme Court approved the doctrine announced by some courts, to the effect that at common law a conspiracy can not be made the subject of a civil action, although damages result, unless something is done which, without the conspiracy, would give a right of action. It was held, however, that the defendant in that case was liable upon averments that he wantonly and maliciously induced a third person to refuse to sell to the plaintiff; and it is sought to hold the defendant in this case liable upon the principle upon which that point was decided and reaffirmed in Raymond v. Yarrington, 96 Texas, 443, where it was held that the defendant was liable for damages where he knowingly and wrongfully induced a third party to breach a contract with the plaintiff.

The testimony does not bring this case within the rule referred to. In the first place, conceding the facts to be as detailed by the plaintiff and her witness Mrs. Floege, it does not appear that the officers of the grand lodge persuaded or induced the officers and members of Lodge No. 12 to dissolve that lodge and organize a new one and exclude the plaintiff from the latter. On the contrary, the plaintiff alleged in her petition that the officers and certain members of Lodge No. 12 formed a conspiracy to oust her from her membership; and instead of alleging that the defendant or its officers induced or persuaded the members of the local lodge to join in the original conspiracy, alleges that the officers of that lodge "induced and persuaded the controlling officers of the defendant, to wit, C. F. Alterman, grand president, and J. Bauer, grand secretary, to participate in their aforesaid scheme and conspiracy against plaintiff." Furthermore, it is reasonably certain from the testimony that a majority of the members of Lodge No. 12 had already determined not to fellowship with the plaintiff, and would have abandoned the lodge and thereby caused its dissolution, if necessary to accomplish that result.

The grand president and secretary are the only officers for whose conduct the plaintiff's petition seeks to hold the defendant liable; and it was not shown that either of these had any personal acquaintance with either the plaintiff, Mrs. Wenzel, or any member of Lodge No. 12 prior to the trouble referred to. Nor were they interlopers. They took no action whatever in reference to the matter until officially requested so to do; and if, as testified by Mrs. Floege, they did order a dissolution of the lodge, there is nothing to indicate that it was done for the purpose of injuring the plaintiff. On the contrary, there is testimony to the effect that the grand president, at the meeting held April 13th, advised the members present that they had no right to refuse to accept the plaintiff's dues and restore her to membership, and some of the members present declared that they would disorganize the lodge before so doing; and if the grand officers made the declarations testified to by Mrs. Floege, it seems more reasonable to attribute them to the conduct of the members present than to any purpose to harm the plaintiff. In fact the record is barren of testimony tending to show any desire or purpose on the part of the grand officers to act otherwise in reference to the discord in Lodge No. 12 than for the best interest of the order of which they were members and officers. The conduct of the grand president in advising the members of the subordinate lodge that the plaintiff had the right to pay her dues and be reinstated to membership, and the conduct of the grand secretary in procuring her affiliation with the other members with the local lodge at San Antonio, and in writing her the letter of date May 10, 1902, negatives the existence of any desire to injure her.

If it be true, as contended by appellee's counsel, that the testimony shows that the members of Lodge No. 12 were not entitled to affiliate with the San Antonio lodge, because they did not change their residence, and that they were not charged the amount prescribed for such affiliation, and that the grand secretary failed to collect the amount of fees that should have been collected when the new lodge was organized, and turned over to that lodge the books and funds of the defunct lodge, we fail to see wherein the plaintiff's case is strengthened. The grand secretary obtained the same benefit from the San Antonio lodge for the plaintiff that he did for the other members of Lodge No. 12, thereby evidencing the fact that he was acting impartially as between the members of that lodge; and if he permitted the new lodge to organize without paying the full amount prescribed by the constitution and by-laws, and surrendered to that lodge any funds or other property which should not have been surrendered to it, the plaintiff was not injured thereby, and such conduct does not indicate any purpose to harm her.

The case of Brown v. Land Mortgage Co., 97 Texas, 599, cited by appellee, is not in point. It was there held that the averments in the petition did not disclose a matter of business competition, but a malicious pursuit of the plaintiffs "by means wholly without justification,

in law or in morals." Nor have we found any case which we regard as authority for holding the defendant in this case liable.

After a careful consideration of all the testimony favorable to the plaintiff, our conclusion is that it shows no culpable conduct on the part of the defendant's officers toward her, and that her suit is without foundation in right, justice and law.

The case appears to have been fully developed, leaving no room to suppose that it can be strengthened for the appellee; and therefore the judgment will be reversed and judgment here rendered for the appellant.

*Reversed and rendered.*

Writ of error refused January 12, 1905, on application of Mrs. Anna Shuetze.