## James H. Feeley, Appellant, v. Frank C. McAuliffe and Frank Tinney, Appellees.

### Gen. No. 44,181.

Opinion filed June 23, 1948.  Released for publication July 12, 1948.

FREDERICK J. BERTRAM, of Chicago, for appellant.

BISHOP, MITCHELL & BURDETT, of Chicago, for appellees.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action for damages based on the charge that defendants maliciously caused plaintiff to lose his position as a Chicago Fire Insurance Patrolman.

A trial by jury resulted in separate verdicts in favor of defendants. Judgments were entered on the verdicts and plaintiff has appealed.

The Chicago Fire Insurance Patrol was organized under the Underwriters Patrol Act, (Chapter 142, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 51.37–51.40]) to discover and prevent fires and to protect and save property against, and salvage property after, a fire. Boards of Underwriters under the Act are empowered to provide, and accommodate, a fire patrol and competent superintendent. The work of a patrol is subject to the control of the city fire marshal wherever such a patrol is organized. The patrol is financed by assessments against fire insurance companies on the basis of premiums collected and the Board of Underwriters makes the patrol budget.

Plaintiff was employed as a patrolman from May 11, 1926 until his discharge June 19, 1942. He was discharged after charges were preferred against him by Defendant McAuliffe and after trial by the Trial Committee of the Fire Insurance Patrol.

The basic issue made by the pleadings was whether plaintiff's discharge and consequent financial loss was the result of the malicious conduct of the defendants. Although a conspiracy between the defendants is charged, the gist of this tort action is the wrongful conduct attributed to the defendants. *Eschman v. Huebner, et al.*, 226 Ill. App. 537. Malice means an intent to do a wrongful harm. *Doremus v. Hennessy*, 176 Ill. 608; *Eschman v. Huebner, et al.*, 226 Ill. App. 537; and *London Guarantee v. Horn*, 206 Ill. 493.

In February 1942, plaintiff was injured in the performance of his duty. The patrol records show that he was thereafter assigned to the Shop, but actually he was employed in decorating McAuliffe's home. His injury caused him distress and after examination and recommendation by the Patrol physician, McAuliffe granted plaintiff a sick leave commencing April 15th,

Plaintiff went to Mexico and in his absence McAuliffe suspended him by a letter which accused plaintiff of violation of section 6 of the Patrol Rules and Regulations. May 19th plaintiff met with McAuliffe in Chicago and, on the same day, was notified in writing by McAuliffe to report to the Patrol Medical Officer for examination. June 1st McAuliffe notified plaintiff of charges preferred against him for violation of section 6 of the patrol rules and regulations and for refusal to obey the order of May 19th to report to the medical officer.

The Underwriters Patrol Act does not provide for government of the patrols organized thereunder. The Chicago Fire Insurance Patrol adopted rules and regulations for its government. Section 6, which plaintiff was accused of violating, requires members of the patrol when on leaves of absence to make daily reports to commanding officers unless excused by the chief officer. Section 7 of the Rules governing patrolmen, requires prompt and unqualified obedience to orders and commands. The chief officer, under the rules, is given supreme command with the power to suspend any officer or patrolman charged with or deemed guilty of violating rules or regulations and is held accountable for good order and discipline of the force and for the payment of patrol funds. McAuliffe has been chief officer of the Chicago Patrol since 1924.

We infer from the verdicts that the jury believed the defense witness' testimony that on April 15, 1942, Defendant McAuliffe excused plaintiff from the daily reports required under Section 6, but ordered plaintiff to keep McAuliffe advised of his whereabouts while he was gone; that plaintiff was in Mexico for 21 days and did not report and was suspended; and that upon his return plaintiff refused to obey McAuliffe's order of May 19th to report to the Medical Officer. We have studied the evidence and see no merit to the contention that the verdicts on the material issues of

fact are against the manifest weight of the evidence. On the question of the May 19th order, plaintiff testified that he tried unsuccessfully twice to see the Medical Officer in the several days before charges were preferred against him. The doctor testified that he was in the city for the customary daily office hours during those several days. We think this shows that the plaintiff did not seriously attempt to comply with the command of his superior officer.

The orders of the Chief Officer were violated by plaintiff. Under the rules and regulations, therefore, McAuliffe had the right and, in view of the nature and function of the organization, the duty of preferring the charges in order that the discipline for which he is held accountable be maintained. There is no contention that the trial, after charges were made, was not in accordance with the procedure established by the rules and regulations. It follows, from what has been said, that the conduct of McAuliffe in doing what he did was not wrongful. This applies with greater force to defendant Tinney who was inferior in grade to McAuliffe. Testimony in the record of laxity on the part of these men in the observance of certain rules and regulations is not relevant.

Since defendants had the right to do what plaintiff said they did to his harm, plaintiff cannot recover for any damages he may have suffered. The gist of the action is unlawful conduct and, where the conduct is lawful, there can be no recovery. *Doremus v. Hennessy; London Guarantee Co. v. Horn,* 206 Ill. 493; and *Eschman v. Huebner, et al.* So long as the conduct was lawful, any question of bitterness and hostility on the part of the actor is immaterial. *Eschman v. Huebner.*

We see no prejudice to the plaintiff in the exclusion from the jury of the Illinois Statutes relating to the Patrol Pension Fund. Plaintiff charged that the defendants caused his discharge in pursuance

of a scheme to eliminate potential pensioners by firing patrolmen including plaintiff. The charge was that the pension fund had been impaired and that it was to the interest of the defendants to repair it in the manner alleged. There was sufficient oral testimony of the provisions of the pension fund, its condition and of plaintiff's relation thereto, before the jury to give them a sufficient understanding. Furthermore, in view of our conclusions hereinabove, the question of motive, so long as the defendants had the right if not the duty to do as they did, is not relevant. It follows also that the plaintiff was not prejudiced by the rulings of the trail court which excluded testimony of McAuliffe's salary. We see no prejudicial error in the admission of records of the Industrial Commission of Illinois with reference to prior injuries to plaintiff nor of his previous suspensions.

With reference to certain documentary evidence bearing on suspensions, there was oral testimony given without objection covering substantially the matter contained in the document objected to. A contention is made that a self-serving statement of McAuliffe's was introduced in evidence. Plaintiff had alleged that false statements were made before the trial committee. The document admitted was a statement purportedly made by McAuliffe before the committee. It consists largely of oral testimony at the instant trial. We see no possible prejudice to the plaintiff.

Because of our conclusion on the question of liability, it follows there is no prejudice to plaintiff in the court's refusal to give instructions numbered 7 and 8 nor in giving instructions numbered 12 and 18 on the question of damages. Any impropriety in the first sentence in instruction No. 11 is overcome by the rest of the instruction. Instructions numbered 11, 12, 14 and 17 state the law correctly. We cannot agree that instructions numbered 16 and 19 were misleading

to the jury. Instructions 11, 13, 14, 15 and 17 directed verdicts for the defendants. Each of these instructions presented a different phase of the defense and the court did not commit error in giving them.

We have considered all of the points raised which we believe merit consideration.

For the reasons given the judgment is affirmed.

*Judgment affirmed.*

BURKE, P. J., and LEWE, J., concur.